IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BILLY ROBINSON | § | |
| Plaintiff | § § § | |
| v. | § § | Case No. 3:10-CV-2140-L |
| EMC MORTGAGE CORPORATION | § § § | |
| Defendant | § § | |

**PLAINTIFF'S REPLY AND BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

NOW COMES Plaintiff file this motion in opposition to Defendant, EMC Mortgage (herein after Defendant) Motion for Summary Judgment.

Dated: December 16, 2011

Respectfully submitted,

/s/s Dennis McCarty
Dennis McCarty
ATTORNEY FOR PLAINTIFF
Mississippi Bar No. 102733
P.O. Box 54172
Hurst, TX., 76054
Telephone: 713-201-5125
Fax (817) 887-5069
dmccartylaw@att.net
Phong Le
ATTORNEY FOR PLAINTIFF
Texas Bar No. 24043776
6065 Hillcroft, Tx 77081
Houston, Texas 77081
Telephone: 713-337-0670
Facsimile: 713-337-0671
Gregory Faries
Gregory Faries, P.A.
645 Lakeland East Drive. Ste. 102

1

Flowood, MS 39232
(601) 939-9906
Fax: (601) 939-9959
Email: gfaries@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 16th day of December, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

W.M. Lance Lewis
Texas State Bar No. 12314560
llewis@qslwm.com
Treyson Brooks
Quilling, Selander, Lownds, Winslett & Moser, P.C.
2001 Bryan Street Suite 1800
Dallas, TX 75201
214-871-2100 (phone)
214-871-2111 (fax)
***Counsel for EMC Mortgage Corporation***

Date Signed this the 9th day of December 2011

/s/ Dennis McCarty
**DENNIS MCCARTY**
MS Bar# 102733
Attorney for Plaintiff
P.O. Box 54172
Hurst, Tx 76054
Phone: 713-201-5125
Fax: 817-887-5069
Phong Le
ATTORNEY FOR PLAINTIFF
Texas Bar No. 24043776
6065 Hillcroft, Tx 77081
Houston, Texas 77081
Telephone: 713-337-0670
Facsimile: 713-337-0671
Gregory Faries
Gregory Faries, P.A.

645 Lakeland East Drive. Ste. 102  
Flowood, MS 39232  
(601) 939-9906  
Fax: (601) 939-9959  
Email: gfaries@gmail.com

# **TABLE OF CONTENTS**

Page

Table of Contents..................................................................................................4

Authorities............................................................................................................4

I. Summary Judgment Standard..........................................................................6

II. Nature of the Case…………………………………..........................................6

III. Arguments and Authorities…………………………………….....................7

IV. Conclusion……………………………………………………………..................15

# **TABLE OF AUTHORITES**

CASES

*Akin v. Santa Clara Land Co., Ltd.*,
  34 S.W.3d 334, 340-41 (Tex. App.--San Antonio 2000, pet. denied)………………15

*Burns v. Thomas*,
  786 S.W.2d 266, 267 (Tex.1990)………………………………………………………15

*Celotex Corp v. Catrett,*
  477 U.S. 317, 322–23 (1986))………………………………………………………..6

*Conley v. Gibson,*
  355 U.S. 41, 47, 78 S. Ct. 99, 2L. Ed. 2d 80, 9 Fair Empl. Prac. Cas. (BNA) 439, 41 L.R.R.M (BNA 2089. 1 Empl. Prac. Dec (CCH) P 9656, 33 Lab. Cas. (CCH) P 71077   (1957)…………………………………………………………..12

*Cousin v. Trans Union Corp.*,
  246 F.3d 359 (5th Cir. 2001)……………………………………………….....12, 13

*Ellert v. Lutz,*
  930 S.W.2d 152, 156 (Tex.App.—Dallas 1996, no writ)………………14, 15

*Fisher v. Beach,*
  671 S.W.2d 63, 67 (Tex.App.—Dallas 1984, no writ). ……………………15

*Gulf Publishing Co. v. Lee,*

    434 So.2d 687, 695 (Miss.1983)……………………………………………..13

*Kelley v. Rinkle,*
   532 S.W.2d 947, 949 (Tex.1976)………………………………………………15

*Manno v. Am. Gen. Fin. Co.,* 4
   39 F. Supp. 2d 418 (E.D. Pa. 2006)……………………………………………12

*Marshall Field Stores, Inc. v. Gardiner,*
   859 S.W.2d 391, 394 (Tex.App.—Houston [1st Dist.] 1993, writ dism'd w.o.j.)….15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
   475 U.S. 574, 586 (1986))……………………………………………………..6

*Pinner v. Schmidt,*
   805 F.2d 1258, 1263 (5th Cir. 1986)…………………………………………..12

*Reaves v. Foster,*
    200 So.2d 453, 458-59 (Miss.1967)).)………………………………………….13

*Reid v. State Farm Mut. Auto Ins. Co.,*
   784 F.2d 577, 578 (5th Cir.1986))……………………………………………..6

*Smith v. Santander Consumer USA,*
    Cause No. 1:10-cv-00202……………………………………………………13

*Washington v. Allstate Ins. Co.,*
   901 F.2d 1281, 1286 (5th Cir.1990)……………………………………………6

*Zimmerman v. Bank of Am.,*
   1:07CV294, 2009 WL 418606 (N.D. Miss. Feb. 19, 2009………………………..10


RULES

Fed.R.Civ.P. 56……………………………………………...……………………….6

Fed. R. Civ. P. 8………………………………………………………………………11

tex.Civ.Prac. & Rem.Code Ann. § 16.002(a) (Vernon Supp.2000)…………………15

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate under Fed.R.Civ.P. 56 if the record discloses 'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Washington v. Allstate Ins. Co.,* 901 F.2d 1281, 1286 (5th Cir.1990) (quoting Fed.R.Civ.P. 56). "The pleadings, depositions, admissions, and answers to interrogatories, together with affidavits, must demonstrate that no genuine issue of material fact remains." *Id.* (citing *Celotex Corp v. Catrett,* 477 U.S. 317, 322–23 (1986)). To that end, this Court must "review the facts drawing all inferences most favorable to the party opposing the motion." *Id.* (quoting *Reid v. State Farm Mut. Auto Ins. Co.,* 784 F.2d 577, 578 (5th Cir.1986)). "Where the record taken as [a] whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)).

## II. NATURE OF THIS CASE

This case arose from a violation of the Fair Credit Reporting Act. The very heart and issue of this case is that a data furnisher can not keep reporting on a credit report that an account is over 180 days late every month for 5 years, regardless if it's secured or unsecured. Defendant keeps arguing issues that are not relevant to the case. Defendant argues that they can report secured or unsecured accounts differently; they can not. However documentation that it was secured (*see* Appendix: Exhibit A&B). However, weather it is secured or not is not relevant to the facts of this case and the heart

of the reporting violation. Defendant keeps arguing that point but is not relevant to this litigation as all. It is very simple, a data furnisher can not report 180 days late for 5 straight years. After 180 days, the account needs to be charged off, repossessed or foreclosed, which Plaintiff has documentation that they charged it off (*see* Appendix: Exhibit C), and once it is charged off or foreclosed, the account will still report but the adding of late dates stop and its labeled "charged off" which no more rolling late dates. This is the nature of Mr. Johansson and Mr. Smith's testimony as you will read in this brief and their affidavits.

### III. ARGUMENTS AND AUTHORITIES

1. Defendant argues that it is loan was a un-secured versus being secured. Defendant's own documents that they provided Plaintiff during discovery contradicts Defendant's argument. Defendant, under oath, filed a Proof of Claim on this very account, filed April 20, 2005 in the United States Bankruptcy Court, Northern District of Texas. Defendant checked the Secured claim box "check this box if your claim is secured by collateral. Defendant also checked the "Real Estate" box when the same form asked "Brief description of Collateral (*see* Appendix: Exhibit A). Defendant also sent Plaintiff during discovery an internal document indicating "2nd MORTGAGE" and "2nd LIEN" within the document itself (*see* Appendix: Exhibit B).

2. The issue of this case and what Plaintiff disputed was that Defendant can not report "open" 180 days late every month for multiple continues years. Regardless if it's called a foreclosure, repossession, or charged-off, the

account is only reported 180 days once and then labeled with either a foreclosure, repossession or charged off and once reported with one of the appropriate statuses, then all reporting of late payments stops on that date (*see* Appendix: Exhibit M&N).

3. Defendant argues that they didn't get the proper information from the credit bureaus. This argument fails for several reasons, When Plaintiff's Counsel disputed the account Defendant, Plaintiff's Counsel also disputed the account with the credit bureaus. CSC, one of the credit bureaus sent an ACDV over to Defendant stating Dispute 1: "106 DISPUTES ACCOUNT STATUS/PAY HISTORY". The ACDV also indicates a field, "FCRA RELEVEANT INFORMATION" and within that field CSC stated "VERIFY RATE AND LATE PAYMENT HISTORY"(*see* Appendix: Exhibit I(1).

4. CSC requested Defendant to investigate all of Plaintiff's payment history that they were reporting and included all of Plaintiff's payment history that CSC/Equifax has on record (*see* Appendix: Exhibit I(1)(2)). Defendant verified all of Plaintiff's payment history with the rolling 180 day late payments from June 2008 up to January 2010. (*Please see* Appendix: Exhibit J). A CSC/Equifax as well as an Experian representative will be a fact witness to testify that they sent an ACDV request with all of Plaintiff's information over to Defendant requesting them to verify all payment history, including but not limited to all of the reported 180 late payments. Plus, in Defendants very own documents that they supplied to Plaintiff in the deposition as well as discovery, Defendant's response to the ACDV from the

dispute that Plaintiff's Counsel requested also states, in the Dispute 1 field, "106-Disputes present/previous Account Status/payment history". And in their same response, in the Relevant Information field, "VERIFY RATE AND LATE PAYMENT HISTORY" (*see* Appendix: Exhibit K). It doesn't get any more clear than that, Defendant knew exactly what they were verifying and attempts to argue that it wasn't a foreclosure in an attempt to muddy the water and confuse the issue. No where in the CSC/Equifax request for investigation or on the ACDV did it mention foreclosure in their request, just that "Disputes account status/pay history" and in relevant information "verify rate and late payment history". It doesn't matter if foreclosure or charge-off. Data furnishers must stop reporting late payments once it is charged-off/repossessed/foreclosed after 180 days of missed payments or earlier.

5. Plaintiff has evidence from documentation sent from Defendant during discovery that Defendant approved this as a charged-off account on February 11, 2005 (*see* Appendix: Exhibit C). That being true, Defendant was required to report the account as "charged-off". Once a trade line gets charged off then even though it continues to report in its current status as a charge-off, no more monthly late payments are added to the tradeline from the date of the charge-off. All late payments stop from that date on. The account is officially charged off and the consumer can then start to rebuild their credit from that time. The charge off gives a start date and the older that date becomes the less damaging it is on the consumers credit report. That is exactly why the Plaintiff would have been able to buy a home even with a bankruptcy and

foreclosure on his record. CSC/Equifax sent over an ACDV requesting them to verify all payment history, that included all of the rolling late payments and Defendant verified the payments. If the account was charged off, as evidence shows, then no more late payment would have been allowed to be posted to the account since 2005 when they "charged off the account".

6. Defendant argues that they conducted a reasonable investigation with the information they had from the credit bureaus. CSC/Equifax spelled it out for them that the payment history was inaccurate and Defendant did not conduct a reasonable investigation into Plaintiff's payment history. Defendant should have realized that they are rolling 180 days late for multiple years, which date furnishers can't due and they posting late payments after the account was charged-off or foreclosed, which data furnishers can't do (*see* Appendix: Exhibit M). A determination if the investigation is reason is up to the jury to decide. (*see Zimmerman v. Bank of Am.*, 1:07CV294, 2009 WL 418606 (N.D. Miss. Feb. 19, 2009)("[W]hether such a 'reasonable' investigation has been conducted is generally a question of fact for the jury.)

7. Defendant argues that this is an un-secured account and that they can continue reporting this account as 180 days late in perpetuity. This actually hurts Defendant's argument. Government banking regulations, including FDIC and Uniform Retail Credit Classification and Account Management Policy requires banks, like Defendant, to charge-off their delinquent closed-end retail loans, as they claim this one is, that becomes past due 120 days. Plaintiff is not litigating to enforce the FDIC policy but just demonstrates that they had a

requirement to "charge-off" and they did it on February 11, 2005 (*see* Appendix: Exhibits G & F).

8. The dispute reasons were clear, the payment history is inaccurate. That is what data furnishers use for their disputes. In this case CSC even told them in the relevant information, "verify rate and late payment history".

9. Plaintiff did dispute in detail that the late payments were inaccurate and even sent EMC a dispute as well, EMC knew what they were investigating (*see* Appendix: Exhibit D).

10. Defendant argues that no other information would have been discovered by a more thorough investigation. Defendant should have discovered that it was charged off in 2004 (*see* Appendix: Exhibit C). They should also have discovered that they were applying late payments and reporting the status of the account inaccurately.

11. Plaintiff repeatedly alleges in his amended complaint that they can't report the account open and 180 days late for 5 years. Plaintiff states in the complaint that they have to foreclose or charge off. Plaintiff stated in the amended complaint that, "the correct reporting would be to indicate the month and year it hit 180+ days late and then to indicate it was a foreclosure or charged off after that" (*see* Docket No. 25, p. 6, ¶ 30.)

12. Defendant could have requested Plaintiff for a more definite statement but did not. Plaintiff was put on notice this was litigation regarding the inaccuracies of the rolling late payments, regardless if the account is truly secured or unsecured, charged-off or foreclosed. (*See* Fed. R. Civ. P. 8(a)(2), Plaintiff is

only required to plead a short and plain statement of the claim showing that the pleader is entitled to relief; *see also Conley v. Gibson,* 355 U.S. 41, 47, 78 S. Ct. 99, 2L. Ed. 2d 80, 9 Fair Empl. Prac. Cas. (BNA) 439, 41 L.R.R.M (BNA 2089. 1 Empl. Prac. Dec (CCH) P 9656, 33 Lab. Cas. (CCH) P 71077 (1957).

13. The credit bureaus do not delete accurate tradelines. It is further demonstrated that rolling late payments for three to 5 straight years are inaccurate due to the fact the credit bureaus deleted the tradeline in their entirety.

14. Defendant argues that defamation is preempted by the FCRA. That is completely inaccurate. The FCRA expressly allows for defamation.

15. The Fair Credit Reporting Act allows a Defamation action if the false information was furnished with malice or willful intent to injure the consumer. 15 U.S.C. § 1681h(e). There is caselaw on defamation in FCRA claims. *See Manno v. Am. Gen. Fin. Co.*, 439 F. Supp. 2d 418 (E.D. Pa. 2006) "willful" violation may be found when the evidence shows that inaccuracies in credit reports arise from something more than an isolated instance of human error which the furnisher of information promptly cures. "Willfully" is knowingly and intentionally committed an act in conscious disregard for the rights of others *Pinner v. Schmidt*, 805 F.2d 1258, 1263 (5th Cir. 1986) (knowingly and intentionally committed an act in conscious disregard for the rights of others): *Also See Cousin v. Trans Union Corp.*, 246 F.3d 359 (5th Cir. 2001) Defamation with malice is when Defendant published the words, they knew were false or published them in a reckless disregard of the truth if the

statement was true or not. *Cousin v. Trans Union Corp.*, 246 F.3d 359, 375 (5th Cir. 2001)(to establish defamation with malice in the present case, one must establish that the defendant when he published the words-(1) either knew they were false, or (2) published them in reckless disregard of whether they were true or not. *See Gulf Publishing Co. v. Lee,* 434 So.2d 687, 695 (Miss.1983) (citing *Reaves v. Foster*, 200 So.2d 453, 458-59 (Miss.1967)).)

16. To further demonstrate that Defamation is not preempted in a FCRA claim, Plaintiff's Counsel prosecuted an FCRA violation in the United States District Court, Western District of Texas in *Smith v. Santander Consumer USA,* Cause No. 1:10-cv-00202, in which a defamation was one of the charges that went to the jury.

17. It is a matter for a trier of fact to determine if Defendant defamed Plaintiff, therefore Defendant's motion for Summary Judgment must fail.

18. Defendant is not reporting the truth. Plaintiff has evidence by documentation that Defendant provided that this account is charged-off years ago, which would be nothing more that a small blip on the radar due to its age. Defendant is reporting it without the charge off so that they can report continuing 180 late payments so that it will show up as a recently missed payments on a current and open account when in reality it was charged off. The Defendant has admitted that this is an old account and charged-off, thereby closing the account. (*see* Appendix: Exhibit C). The document has all of the signatures that the form requires for approval. Defendant charged off this account as required by government policies for banks reporting seriously delinquent debt.

19. Defendant further argues that they are entitled to a Summary Judgment because Plaintiff can't establish damages. Plaintiff was turned down when he attempted to purchase a home for the sole reason of Defendant's reporting. Not only did the real estate agent inform Plaintiff that was the reason but once Defendant's tradeline was deleted, Plaintiff qualified and closed on a home on or about November 1, 2011. The only item that changed on Plaintiff's credit report was the deletion of Defendant's tradeline. It was because of that reporting, Plaintiff was denied a home. Because of Defendant's reporting, Plaintiff was denied on multiple rent homes. Plaintiff had to beg for an individual to rent to him. Plaintiff was effectively homeless and suffered severe stress, mental anguish not being able to find a home to rent. Plaintiff suffered severe embarrassment and humiliation by having to beg a landlord to rent to home so that he could have a roof over his families head. The rent house couldn't make the rent house accessible for his grandmother, who raised Plaintiff, so he had to move her into a nursing home where she died alone rather then at home with the family as intended, leaving him with severe depression and mental anguish (*see* Appendix: Exhibit L).

20. Plaintiff doesn't dispute that fact there was a debt that went delinquent, Plaintiff disputes how that bad debt was being reported.

21. Defendant argues that the statute of limitations expired for a defamation cause of action. A defendant moving for summary judgment on the basis of limitations bears the burden of showing that the claim against it is barred by limitations as a matter of law. *See Burns v. Thomas*, 786 S.W.2d 266, 267 (Tex.1990); *Ellert v. Lutz,* 930 S.W.2d 152, 156 (Tex.App.—Dallas 1996, no writ). A defendant seeking summary judgment on the basis of limitations must

prove when the cause of action accrued and must negate the discovery rule by proving as a matter of law that there is no genuine issue of fact about when the plaintiff discovered the nature of the injury *See Burns*, 786 S.W.2d at 267; *Ellert*, 930 S.W.2d at 156.

101112 Defamation has a one-year limitations period. tex.Civ.Prac. & Rem.Code Ann. § 16.002(a) (Vernon Supp.2000). A cause of action for defamation accrues when the injured party learned of, or in the exercise of reasonable diligence should have learned of, the defamatory communication. *See Kelley v. Rinkle,* 532 S.W.2d 947, 949 (Tex.1976). Each distinct publication of a defamatory statement inflicts an independent injury from which a defamation cause of action may arise. *See Marshall Field Stores, Inc. v. Gardiner,* 859 S.W.2d 391, 394 (Tex.App.—Houston [1st Dist.] 1993, writ dism'd w.o.j.); *Fisher v. Beach,* 671 S.W.2d 63, 67 (Tex.App.—Dallas 1984, no writ). Akin filed her original *341 petition alleging her defamation claim on December 19, 1997.

Therefore, limitations barred any distinct publication of a defamatory statement that Akin learned of (or should have learned of) before December 19, 1996. *Akin v. Santa Clara Land Co., Ltd.*, 34 S.W.3d 334, 340-41 (Tex. App.--San Antonio 2000, pet. denied). Defendants continued to report negative credit information upto on or about March 2011, injuring Plaintiff each and every month bringing a new cause of actions, *see Marshall Field Stores, Inc. v. Gardiner*. Plaintiff discovered the reporting the first time when they attempted to buy a house on or about January 2010.

## IV. CONCLUSION

**WHEREFORE PREMISES CONSIDERED,** for the reasons stated above as well as all affidavits and all of the pleadings and information on the record that the Court

15

deny Defendant's Motion for Summary Judgment and for such other relief, whether at law or in equity, including attorneys fees which Plaintiff is so entitled.