IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **BILLY ROBINSON**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:10-CV-2140-L** |
| | § | |
| **EMC MORTGAGE CORPORATION**, | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court is Defendant EMC Mortgage LLC's Motion for Summary Judgment (Doc. 46), filed November 18, 2011, and Defendant EMC Mortgage LLC's Objections to Order Granting Plaintiff's Motion to Compel (Doc. 94), filed May 25, 2012. After careful consideration of the motion, response, reply, briefs, appendices, record, and applicable law, the court **grants** Defendant EMC Mortgage LLC's Motion for Summary Judgment (Doc. 46), **sustains** Defendant EMC Mortgage LLC's Objections to Order Granting Plaintiff's Motion to Compel (Doc. 94) as herein stated, **vacates in part** the magistrate judge's order (Doc. 93), and **dismisses** this action **with prejudice**.

## I.    Procedural and Factual Background

Plaintiff Billy Robinson ("Plaintiff" or "Robinson") brought this action on October 25, 2010, against Defendants EMC Mortgage Corporation ("EMC"); Equifax Mortgage Services, L.L.C. ("Equifax"); CSC Credit Services, Inc. ("CSC"), and Experian Information Solutions, Inc.

("Experian")[1] (collectively, "Defendants"), asserting a claim for alleged violations of the Fair Credit Reporting Act ("FCRA").  In a June 9, 2011 First Amended Complaint ("Amended Complaint"), Robinson added a claim against all Defendants for defamation.  By orders dated March 31, 2011, and June 20, 2011, all claims against Equifax, CSC, and Experian were dismissed with prejudice.

Robinson's claims arise from an unsecured loan that he and Olivia Robinson[2] obtained from Conesco Bank, Inc. on May 31, 2002, in the amount of $20,000 at an interest rate of 15.99 percent for purposes of debt consolidation.[3]  Def.'s App. 2, 4-6.  Servicing of this loan was subsequently transferred to EMC and will be referred to herein as the "EMC Loan."  Before obtaining the loan from EMC, Robinson obtained two other loans in 2002.  On January 15, 2002, Robinson obtained a loan, which was secured by a deed of trust from Texas Residential Mortgage, L.P., in the amount of $161,405, to purchase a home in DeSoto, Texas.  *Id.* 58-64.  The home mortgage loan was subsequently transferred to Wells Fargo Home Mortgage ("Wells Fargo") some time before April 8, 2005.  *Id.*  The court will refer herein to the January 15, 2002 note and deed of trust as the "Wells Fargo Loan." 47.  On May 23, 2002, Robinson obtained a third loan from Conseco Finance Servicing Corp. in the amount of $28,800 to consolidate his debt.  *Id.* 68-74.  This loan, which was later transferred to Greentree Mortgage ("Greentree"), was also secured by a mortgage deed of trust dated May 23, 2002.  *Id.* 47, 68-71, 74.  This deed of trust was executed after the Wells Fargo Loan and therefore was subordinate to Wells Fargo's lien.  The court will refer herein to May 23, 2002 note and deed of trust as the "Greentree Loan."

---

[1] Equifax, CSC, and Experian are all credit reporting agencies, which the court refers to herein individually as "CRA" and collectively as "the CRAs."

[2] Olivia Robinson is presumably Robinson's spouse.

[3] Unless otherwise stated, the facts set forth in this section are undisputed.

**Memorandum Opinion and Order – Page 2**

Robinson stopped making payments on the EMC Loan after June 4, 2004. *Id.* 12; *see also* Pl.'s Compl. 3.  On April 8, 2005, Robinson filed for bankruptcy and listed the EMC Loan with a balance of $18,174.79 as an unsecured debt, and listed the Wells Fargo Loan for $157,026.25 and Greentree Loan for $28,191.13 as secured debts. *Id.* 46-47.  Robinson's Preliminary Chapter 13 Plan specifies that his residence is the collateral for the Wells Fargo and Greentree loans. *Id.*  The Preliminary Chapter 13 Plan does not specify that any collateral secures the EMC loan because it is listed as an unsecured debt.  On April 1, 2008, Robinson's Chapter 13 bankruptcy case was dismissed without discharging or affecting any of the debts owed by him. *Id.* 149-53.

On May 1, 2007, Wells Fargo foreclosed and sold at auction the DeSoto property that secured the Wells Fargo and Greentree Loans. *Id.* 138-140.  In October 2009, while Robinson was looking for property to purchase or lease, he discovered that his credit report reflected that EMC was reporting payments on the EMC Loan as being 180 days past due. Doc.69-13 at 2-3.[4]  Robinson mistakenly believed that the foreclosure extinguished the EMC Loan and was therefore surprised to learn that EMC had not reported the account as closed. *See* Pl.'s Compl. 4; Pl.'s App. (Doc. 69-13, ¶ 2); Hr'g Tr. 21, 30.  In an affidavit, Robinson states that after discovering the delinquent payment history on his credit report, he contacted and spoke with "a representative from EMC" and someone in "upper management" about his account and "pleaded with EMC to report accurate information on the report." Pl.'s App. (Doc. 69-13, ¶ 2).  It is unclear from Robinson's affidavit what reason he gave for his belief that his credit report contained inaccurate information.  Robinson states that he

---

[4] The evidence cited was submitted by Plaintiff in an appendix in support of his response to EMC's summary judgment motion; however, because the pages of the appendix are not numbered sequentially in accordance with this District's Local Civil Rules, the court refers to them according to the electronic docket and page number located at the top of each page.

was informed by the EMC representative that there was nothing EMC could do and that he needed to pay the loan.

Unhappy with EMC's response, Robinson or his attorney disputed information on his credit report regarding the EMC Loan to the CRAs six times between December 18, 2009, and January 27, 2011.  EMC investigated each dispute and reported the results of its investigations to the CRAs. Each time, EMC confirmed that the information reported regarding Robinson's account was accurate.  Robinson states in his affidavit that the 180-day late reporting for his EMC account was eventually removed from his credit report, but he does not state when this occurred.  Based on other information in his affidavit, it appears that the late reporting was removed sometime after January 18, 2011.  It is unclear from the record or Plaintiff's pleadings why the late reporting was eventually removed from Robinson's credit report; however, Plaintiff's counsel explained during a hearing held on December 21, 2012, regarding EMC's summary judgment motion that Chase bought EMC and "Chase does not report this way."  Hr'g Tr. 6.

In his Amended Complaint, Robinson contends that EMC violated section 1681s-2(b) of the FCRA by failing to conduct a good faith investigation of his complaints to the CRAs.  According to Robinson, "[I]t is impossible for Plaintiff to have stopped paying on his account since 2004, have a mortgage foreclosed on in 2007 and still be 180 days late in 2010 . . . . This account was foreclosed on or about March 2007."  Pl.'s Compl. 21, ¶ 93.  Based on his belief that the foreclosure extinguished the EMC Loan, Robinson contends that "EMC should have investigated and furnished the correct information to the [CRAs] from the investigation that the account was foreclosed on or about March 2007."  *Id.* Robinson contends that EMC defamed him by willfully and maliciously furnishing the CRAs with false information because EMC reported inaccurate information, and, after

he informed EMC that the account was being inaccurately reported, EMC told him that the information being reported regarding his account would not change until Robinson paid the loan. *Id*. 22, ¶ 94-95.

After the close of discovery, EMC moved for summary judgment on Plaintiff's FCRA and defamation claims on November 18, 2011, on the grounds that: (1) EMC's investigation under the FCRA of Robinson's complaints to the CRAs was reasonable given the vague nature of the dispute described in the CRAs' notices to EMC and the irrelevant information regarding the foreclosure; (2) Plaintiff's defamation claim is preempted by the FCRA and there is no evidence that EMC acted with malice or willful intent to injure Robinson; (3) EMC is entitled to judgment on Plaintiff's defamation claim because the information reported by EMC to the CRAs is true or substantially true; (4) Plaintiff cannot establish that he suffered compensable damages necessary for a defamation claim; and (5) Plaintiff's defamation claim is barred in part by applicable statute of limitations.

## II.    Motion for Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party.  *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).  Further, a court "may not make credibility

determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Id.* (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws

will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## III.   FCRA Claim Under Section 1681s-2(b)

### A.   The Parties' Contentions

EMC contends that it is entitled to judgment on Robinson's failure to investigate claim under section 1681s-2(b) of the FCRA because: (1) although Robinson contends that he personally contacted EMC and disputed the debt and that EMC failed to accurately report his account, the only private cause of action under the FCRA against a furnisher of information such as EMC is under 15 U.S.C. 1681s-2(b) for failure to investigate disputes reported to CRAs; and (2) despite the vague description of Robinson's dispute provided by the CRAs, EMC investigated each reported dispute and conveyed the results of each investigation as required by the FCRA. Aside from the vagueness of the information received from the CRAs regarding the disputes, EMC contends that Robinson's disputes regarding his account are premised on the faulty or mistaken belief that his debt under the EMC Loan was extinguished by Wells Fargo's foreclosure on Robinson's property. EMC also contends that Plaintiff cannot show any factual inaccuracy in his account as reported or establish a causal connection between EMC's investigation and its failure to discover alleged inaccuracies in his account.

Based on *Chiang v. Verizon New England Incorporated*, 595 F.3d 26, 35 (1st Cir. 2010), EMC contends that it was required only to conduct a reasonable investigation of the disputed

information, and that the reasonableness of its investigation is determined by an objective standard based on the circumstances and in light of what it learned about the nature of Robinson's dispute in the CRAs' notices of the dispute.  Based on the same authority, EMC asserts that Robinson has the burden of establishing that: (1) EMC's investigation was unreasonable; (2) his reported account contained an actual inaccuracy; and (3) there is a causal connection between the allegedly unreasonable investigation and EMC's failure to discover account inaccuracies.

In support of its motion, EMC submitted the affidavit of Araceli Vargas, a senior research specialist for JPMorgan Chase Bank, N.A. and EMC.  Attached to Vargas's affidavit is a copy the EMC Loan, the payment history for the loan, the requests to investigate Robinson's account that EMC received from the CRAs, and copies of EMC's responses to the requests to investigate.  Vargas states that the EMC Loan is not secured and that the note was not foreclosed because there is no lien to foreclose.  Vargas further states that the account is past due and although payments are due each month, Plaintiff has not made any payments.  With regard to the requests for investigation, Vargas acknowledges that EMC received six requests from the CRAs, and for each request, EMC conducted an investigation as to the disputed information and reported the results of the investigations to the CRA that requested it.

In his November 18, 2011 response to EMC's summary judgment, Robinson retreats from his prior position that EMC's reporting of his account is inaccurate because of the foreclosure and instead contends that regardless of whether the loan was secured or foreclosed, EMC was required to either charge off the account, repossess, or foreclose 180 days after he stopped making payments on the account.  Robinson further contends that EMC received all relevant information necessary to investigate his disputes, and he disagrees with EMC's contention that the CRAs' descriptions of the

disputes are vague or based on the foreclosure. Robinson maintains that the CRAs' requests that EMC "VERIFY RATE AND LATE PAYMENT HISTORY," based on his "Disputes present/previous Account Status/payment history" were sufficiently specific to alert EMC that his debt was either charged off or should have been charged off after 180 days of delinquency. Pl.'s Br. 8. Thus, according to Robinson, "[t]he dispute reasons were clear, the payment history is inaccurate," and "It doesn't get any more clear than that, Defendant knew exactly what they were verifying and attempts to argue that it wasn't a foreclosure [is] an attempt to muddy the water and confuse the issue." *Id.* at 9, 11.

Based on a document produced by EMC during discovery, Robinson further contends that his account was charged off by EMC on February 11, 2005, and EMC therefore should have discovered it was charged off or foreclosed when it investigated his disputes. Alternatively, Robinson contends that even if the debt was not charged off, EMC was required by "[g]overnment banking regulations, including FDIC[5] and Uniform Retail Credit Classification and Account Management Policy" to charge off the account within 180 days of his nonpayment on the EMC Loan. Robinson therefore contends that EMC should have discovered when it investigated his disputes to the CRAs that it was incorrectly continuing to report that his account was open and delinquent. Pl.'s Br.; Pl.'s App. (Doc. 69-7). Finally, Robinson contends that the reasonableness of EMC's investigation of his disputes is a fact issue for the jury to decide.

In opposition to EMC's motion, Robinson relies on his own affidavit and three letters prepared by his attorney to the CRAs. In support of his contention that the account was charged off

---

[5] It is apparent from the policy statement submitted in support of Plaintiff's response that his use of the term "FDIC" refers to the Federal Deposit Insurance Corporation.

on February 11, 2005, Robinson submitted a one-page internal EMC document titled "Profit & Loss Statement (EMC) Write-Off/Down" that was prepared by an employee named Sara Howard.  Pl.'s App. (Doc. 69-3).  For support that EMC was required to charge off the account after 180 days, Robinson submitted affidavits of Gerald E. Smith ("Smith") and Edwin Escher Johansson IV ("Johansson"), two of the witnesses designated by Robinson as experts.  As previously noted, he also relies on the aforementioned FDIC policy.  Pl.'s App. (Doc. 69-7).

EMC objects to Smith's and Johansson's affidavits on the ground that they contain new expert opinions not previously disclosed.  EMC further asserts that Smith's affidavit contains unsupported legal conclusions, and that neither Smith nor Johansson should be permitted to testify regarding the law because this is a matter for the court to decide.  Robinson did not respond to the evidentiary objections asserted in EMC's reply brief or seek leave to file a sur-reply to address the objections.  To demonstrate how the opinions of Smith and Johansson have evolved since first disclosed, EMC provides the following comparison of their prior opinions and those provided in response to the summary judgment:

> Previously Mr. Smith stated: "The house was sold out of foreclosure in 2007 and the final price was $9000 [sic] more than the sum of the two mortgages Mr. Robinson had on the home. The second mortgage was for $20,000 and was the one EMC had reported and kept on his credit as delinquent for five years. Incredibly, more than three years after the house was sold at a $9000 [sic] profit, month-by-month, EMC continued to report the account as delinquent with the delinquent balance reaching $25,787 by February of 2011 because the monthly payment of $355 payment [sic] for the $20,000 that Mr. Robinson no longer owed on the house he no longer owned was added to the balance each month and continued being reported as delinquent." Doc. No. 32-2, p. 5. Now Mr. Smith states: "retail credit must be classified as a loss and charged off at 180 cumulative days, or repossession or foreclosure procedures should be initiated at 180 cumulative days for collateralized loans. The defendant has speciously argued that the loan was not

collateralized, but it is clear from the above that it does not matter if it was collateralized or not." Doc. No. 69-14, ¶ 3.

Def.'s Reply 3 n.1.  EMC similarly notes the differences between Johansson's current affidavit and previously disclosed opinion:

> Mr. Johansson previously maintained: "EMC is a mortgage, currently past due, and with a recent history of ALSO being past due each month prior." Doc. No. 32-1, p. 13. "Lenders simply do not give new mortgages to consumers that have recent mortgage late payments listed every month, including the month of application and for years prior." Doc. No. 67-4, ¶ [sic] 6. Now Mr. Johansson states: "Documentation shared with me by Mr. McCarty shows that EMC charged-off this account . . . Data Furnishers have a duty to charge off debts after a certain period of non-payment but within 180 days of the First Date of Delinquency." Doc. No. 69-15, p. 5.

*Id.* n.2.[6]

## B.     Discussion

### 1.     Objection to Expert Affidavits

The court agrees with EMC that Smith's and Johansson's statements as to what the FCRA or law requires of furnishers and their opinion that EMC had a legal duty to charge off and report as charged off Robinson's account exceeds the boundaries of permissible expert testimony.  As the Fifth Circuit explained in *Askanase v. Fatjo*, 130 F.3d 657 (5th Cir. 1997): "There is one, but only one, legal answer for every cognizable dispute. There being only one applicable legal rule for each dispute or issue, it requires only one spokesman of the law, who of course is the judge." *Id.* at 673. While expert testimony in the form of an opinion or inference otherwise admissible is not per se

---

[6] The quote "Lenders simply do not give new mortgages to consumers that have recent mortgage late payments listed every month, including the month of application and for years prior," is contained in an affidavit by Johansson that Plaintiff submitted on December 9, 2011, in response to motion by EMC to strike Plaintiff's expert testimony and is located on page 6 of the affidavit at paragraph 6.  This affidavit was submitted one week before Plaintiff filed his response to EMC's summary judgment motion on December 16, 2011.

objectionable because it merely embraces an ultimate issue to be decided by the trier of fact, however, "an expert may never render conclusions of law." *Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009) (citing *Snap-Drape, Inc. v. Comm'r*, 98 F.3d 194, 198 (5th Cir. 1996) (concluding that expert reports "consisted of nothing more than legal arguments" and were therefore properly excluded)). Moreover, "[a]llowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant." *Owen v. Kerr  McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983). Finally, for the reasons herein explained, Johansson's testimony that it is industry practice to charge off and report debt as charged off after 180 days of nonpayment is irrelevant because, contrary to Johansson's assertion, there is no legal requirement that EMC charge off the debt. Accordingly, the court **sustains** EMC's objection to the referenced portions of Smith's and Johansson's affidavit and does not consider their statements regarding the law, what EMC is required to do under the law, and what the document provided by Robinson's counsel shows. Because the court's ruling in this regard disposes of all of the objectionable statements by Smith and Johansson, it need not address whether the same statements should be excluded on the grounds that they are new expert opinions not previously disclosed.[7]

---

[7] As herein discussed, EMC is entitled to judgment as a matter of law on Plaintiff's claims regardless of whether the court considers the objected to statements by Smith and Johansson because, contrary to Smith and Johansson, there is no law that requires furnishers under the FCRA to charge off debt after 180 days, and Plaintiff has failed to raise a genuine dispute of material fact as to whether the account was actually charged off and whether EMC's investigation was unreasonable.

**Memorandum Opinion and Order – Page 12**

## 2.      Whether EMC Satisfied Its Duty to Investigate under the FCRA

Section 1681s-2(b)[8] sets forth the "Duties of furnishers of information upon notice of

dispute" and provides in pertinent part:

> After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute
> with regard to the completeness or accuracy of any information provided by a person
> to a consumer reporting agency, the person shall
> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the consumer reporting agency
> pursuant to section 1681i(a)(2) of this title;
>
> (C) report the results of the investigation to the consumer reporting agency;

15 U.S.C. § 1681s-2(b)(1).  To establish a violation of section 1681s-2(b), a consumer must show

that he notified a consumer reporting agency of the dispute in accordance with the procedure set forth

in section 1681i(a)(2), and "that a *consumer reporting agency* . . . notified [the furnisher] pursuant

to 1681i(a)(2)" of the consumer's dispute "within five business days from the time the consumer

notifies the consumer reporting agency of the dispute."  *Young v. Equifax Credit Info. Servs.*, 294

F.3d 631, 639 (5th Cir. 2002) (emphasis in original).  "Such notice [by a credit reporting agency] is

necessary to trigger the furnisher's duties under Section 1681s-2(b)."  *Id.*  A consumer must also

establish "that a *consumer reporting agency* . . . notified [the furnisher] pursuant to 1681i(a)(2)" of

the consumer's dispute "within five business days from the time the consumer notifies the consumer

reporting agency of the dispute."  *Young*, 294 F.3d at 639 (emphasis in original). Thus, the Fifth

Circuit held in *Young* that any private right of action a consumer may have under section 1681s-2(b)

requires proof that a consumer reporting agency notified the furnisher of information pursuant to

---

[8]  Courts disagree whether Section 1681s-2(b) provides a private right of action, and the Fifth Circuit has not
decided this question.  *See Young v. Equifax Credit Info. Servs.*, 294 F.3d 631, 639 (5th Cir. 2002).

**Memorandum Opinion and Order – Page 13**

section 1681i(a)(2).[9]  *Id.*   The FCRA also permits a consumer to notify furnishers of disputes directly; however, there is no private cause of action for a furnisher's failure to investigate such as dispute under section 1681s-2(b).  *Ashton v. Sallie Mae, Inc.*, No. 3:10-CV-0084-D 2010, WL 850984, at *2 (N.D. Tex. Mar. 10, 2010) (citing *Chiang*, 595 F.3d at 35 n.8).  Accordingly, it is irrelevant to the court's analysis that Robinson contacted EMC directly to dispute information reported regarding his account, and the court considers only his disputes to the CRAs.

The FCRA does not indicate what amount of investigation is required under section 1681s-2(b)(1).  Both parties in this case acknowledge that a furnisher of information's investigation of a dispute under section 1681s-2(b)(1) must be reasonable.  At least one district court in this circuit has concluded that a furnisher's requirement "to conduct a reasonable investigation to determine whether disputed information in a consumer credit report can be verified is widely recognized." *Robertson v. J.C. Penney Co., Inc.*, No. 2:06-CV-3KS-MTP, 2008 WL 623397, at *8 (S.D. Miss. Mar. 4, 2008) (collecting circuit and district court cases from the Third, Fourth, and Seventh Circuits and concluding that "a reasonable investigation 'clearly requires some degree of careful inquiry by creditors' and more than just a 'superficial inquiry.'"). The same court further concluded that section 1681s-2(b)(1)'s investigation requirement for furnishers "is analogous to the requirement imposed upon credit reporting agencies under section 1681i(a) to reinvestigate a consumer's dispute regarding information contained in his credit report and, therefore, furnishers of credit are required to conduct a reasonable investigation." *Id.* (internal quotation marks omitted) (quoting *Bruce v. First U.S.A.*

---

[9] The parties do not address in their briefing whether the CRAs notified EMC of Robinson's disputes within five days, and it is unclear from the record whether this requirement has been met; however, because EMC did not move for summary judgment on this ground, the court does not consider it.  Additionally, although EMC acknowledges that it was notified by the CRAs of six disputes by Robinson, the court was only able to locate records for five disputes in the summary judgment record.

*Bank, Nat'l Assoc.*, 103 F. Supp. 2d 1135, 1143 (E.D. Mo. 2000)).   The reasonableness of an investigation under the FCRA is generally a question of fact for the jury. *See Cousin v. Trans Union Corp.*, 246 F.3d 359, 368-69 (5th Cir.), *cert. denied*, 534 U.S. 951 (2001).

## a.   Foreclosure

Robinson's summary judgment response focuses on whether EMC should have discovered in its investigations that his account was charged off by EMC in 2005.   Because it appeared Robinson's summary judgment response was based on factual theories not previously alleged or alleged insufficiently,[10] and his live pleadings confused the EMC loan with Robinson's other loans, the court scheduled a hearing on EMC's summary judgment motion, which was held on December 21, 2012.   Although Robinson argued in his summary judgment response that his account was either foreclosed or charged off, he acknowledged during the hearing on EMC's motion that the EMC Loan was not foreclosed and not extinguished as a result of Wells Fargo's foreclosure.   Hr'g Tr. 21, 30 ("The Court:   the promissory note that the Plaintiff had with EMC Mortgage LLC was not foreclosed on; is that correct?   Mr. McCarty: Absolutely correct."); Hr'g Tr. 29-30 ("The Court: . . . "We have established today there was no foreclosure. Mr. McCarty: There was no foreclosure.").

Furthermore, the EMC Loan itself establishes that it was not secured by a lien on the property, making foreclosure an impossibility, and as EMC correctly noted during the hearing on its motion, there is nothing EMC could have done after the loan was executed to unilaterally create a

---

[10] EMC contends, and the court agrees, that Robinson's Amended Complaint and claims are premised on the alleged foreclosure, whereas Robinson argued for the first time in his summary judgment response that his account with EMC was charged off.   Robinson's contention in this regard was based on a document he obtained during discovery before EMC filed its summary judgment motion; however, Robinson never requested leave to amend his pleadings to include his new theory that EMC's reporting was inaccurate and its investigation unreasonable because his account was charged off by EMC in 2005.

**Memorandum Opinion and Order – Page 15**

security or lien.[11]   Accordingly, Plaintiff's FCRA claim based on an alleged foreclosure is without

merit, and he has failed to raise a genuine dispute of material fact regarding the reasonableness of

EMC's investigation on this ground. Thus, the only issue remaining is whether EMC should have

discovered in its investigations that Robinson's account was charged off or should have been charged

off.

### b.    Legal Duty to Charge off Delinquent Account

Plaintiff contends, based on an FDIC statement of policy titled "Uniform Retail Credit

Classification and Account Management Policy" and a Notice pertaining to the policy statement, that

EMC was legally required to charge off his account after 180 days of nonpayment.   Neither of the

documents contains any binding statements and merely propose that "open-ended retail loans that

become past due 180 cumulative days from the contractual due date *should be* classified Loss and

charged off."  Pl.'s App. (Doc. 69-7) (emphasis added).   Even if it were binding authority, there is

nothing in the summary judgment record or briefing that shows that either EMC or the EMC Loan

is governed by the FDIC and subject to this policy statement, which according to the Notice: "This

Policy is a supervisory policy used by the Agencies for uniform classification and treatment of retail

credit loans in financial institutions."[12]

Further, the court is unaware of any legal authority that would require EMC to charge off

Robinson's account after 180 days of delinquency, and when pressed by the court during the hearing

---

[11] In his response brief and during the summary judgment hearing, Robinson pointed to an internal EMC document and EMC's proof of claim in the bankruptcy proceeding in an attempt to establish that the EMC Loan was secured by a lien, even though the May 31, 2002 note itself indicates that there is no security for the loan.  *See* Def.'s App. 6.

[12] The Notice defines "Agencies" as the Federal Financial Institution Examination Counsel, the FDIC, the Office of the Comptroller of the Currency, and the Office of Thrift Supervision.

on EMC's motion, Plaintiff was unable to offer any legal authority other than the FDIC policy statement.  Taken to its logical conclusion, Plaintiff's argument that companies are required to charge off delinquent loans after 180 days would lead to the absurd result of allowing anyone to avoid his contractual obligations by taking out a loan and not making payments for 180 days.  According to Plaintiff's theory, there would be no need for anyone to file for bankruptcy because the indebtedness would be automatically discharged after 180 days of nonpayment.  Absent authority that EMC was required by law to charge off the account, the court concludes that Robinson has failed to raise a genuine dispute of material fact regarding the reasonableness of EMC's investigation.  For the same reason, Robinson's assertion that it is standard practice in the industry to charge off debt in this manner is irrelevant to whether EMC was required to charge off Robinson's loan.

### c.        Alleged February 11, 2005 Charge off

Robinson contends that EMC's investigations of his reported disputes were unreasonable because it failed to discover that this account had been charged off by EMC in February 2005.  To show that his account was charged off by EMC in February 2005, Robinson submitted a one-page internal EMC document titled "Profit & Loss Statement (EMC) Write-Off/Down."  Pl.'s App. (Doc. 69-3).  The copy of the document provided to the court is barely legible due to the small size of the print and shading that appears in certain columns.  The document appears to be a standard form that was used by EMC in deciding whether to charge off an account as a loss.  At the bottom of the document, there are three signatures lines.  The first signature line states: "P&L Completed By: Sara Howard."  *Id*.  "Approved By:_____" appears in the second and third signature lines followed by the initials of unknown persons and a date of "2-11-05."  *Id*.  The following "COMMENTS" are set

forth above the signature lines: "[indecipherable]code & suggest chargeoff and move to X[;] we have not had payments on loan for over six months[;] customer told us loss job back in oct." *Id*.

In its reply brief, EMC contends that this document is not evidence that Robinson's loan was charged off as a loss and establishes only that an EMC employee recommended that the loan be charged off. For support, EMC relies on the deposition testimony of Vicki Landis, who was questioned regarding the document and testified that it is merely a recommendation by Howard to her manager to charge off Robinson's loan that was never approved by EMC. Landis further testified that Howard's recommendation would not have been approved because it was not EMC's policy to charge off loans that were delinquent due to a "temporary change of circumstance[s]" resulting from "the loss of a job." Def.'s App. 158.

While the court must view facts and inferences reasonably drawn from those facts in the light most favorable to the nonmoving party, "summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little v. Liquid Air Corp*., 37 F.3d 1069, 1076 (5th Cir. 1994) (citation and internal quotation marks omitted). Moreover, a court should not, in the absence of proof, assume that the nonmoving party could or would provide the necessary facts. *Id.* at 1075. Here, the sole document relied on by Plaintiff creates only a weak issue of fact as to whether the account was actually charged off by EMC in 2005 because Landis testified regarding the document and explained that it was only a recommendation that was not ultimately approved by EMC. Landis's testimony that the loan was not charged off and would not have been charged off under the circumstances is further supported by other evidence that Plaintiff submitted, which indicates that Olivia Robinson contacted EMC on October 18, 2004, about the delinquent account and requested a forbearance agreement. According

to this internal EMC document, Olivia Robinson advised EMC that she had lost her job but could make payments every other week until current on the loan.  Pl.'s App. (Doc. 67-2) ("MS CLLD STATED RFD: LOST HER JOB. MS STATE CAN PAY A PMT EVERY OTHER WEEK UNTIL CURRENT. PUT ON PMT PLAN STARTING THIS WEEK . . . Forbearance Agreement P.1 LETTER SENT").  Accordingly, the court cannot reasonably infer that EMC would charge off the account in late 2004 or early 2005 if there was a possibility that the Robinsons would make payments on the loan.  Also, if the loan had been charged off, it is reasonable to infer that the charge-off would have been reflected in the other documentation for Robinson's account; however, his account history indicates that the loan was not charged off.  Additionally, Robinson listed the debt when he filed for bankruptcy on April 8, 2005, and EMC, as Robinson's creditor, filed a claim in the bankruptcy proceeding as to the loan.  If EMC had made the decision in February 2005 to charge off the loan as a loss, the filing of a claim in the bankruptcy does not logically follow.  Thus, taken as a whole, the record would not lead a rational trier of fact to find that the loan was charged off in February 2005.  *See Fontenot*, 780 F.2d at 1194.

Moreover, even assuming that the loan was charged off as a result of Howard's recommendation, Robinson has still failed to meet his summary judgment burden of raising a genuine dispute of material fact as to the reasonableness of EMC's investigations of his reported disputes.  Again, the only record that apparently reflects the contemplated decision to charge off the loan is the one-page document containing Howard's recommendation, and Robinson fails to provide any explanation as to why EMC's investigation of his reported disputes should have uncovered this document based on the CRAs' requests that EMC "VERIFY RATE AND LATE PAYMENT HISTORY."  Pl.'s Resp. 9, 11.

**Memorandum Opinion and Order – Page 19**

Further, while the court agrees that reasonableness is generally a question for the jury, Robinson must first meet his burden of coming forward with evidence sufficient to raise a genuine dispute of material fact regarding the reasonableness of EMC's investigation.  It is not enough to simply argue that reasonableness is a question for the jury.  Given the vague nature of the information provided by the CRAs regarding Robinson's disputes, the court concludes that no rational trier of fact could find, based solely on this evidence, that EMC should have discovered that Robinson's loan was allegedly charged off in February 2005 or that Robinson was disputing information in his credit report on this basis.[13]   Contrary to Robinson's contention, he did dispute

---

[13] In cases in which courts have found a furnisher's investigation unreasonable, the plaintiff's disputes to the credit reporting agencies were much more specific than Robinson's disputes, and the plaintiffs did more than simply contend, without explanation, that the payment history was inaccurate or request the credit reporting agencies to verify the payment history on the account.  For example, in *Robertson*, the plaintiffs twice disputed the debt to the credit reporting agencies and specifically contended that they had paid the debt at issue.  The plaintiffs also followed up by sending detailed dispute letters to the credit reporting agencies.  *Robertson*, 2008 WL 623397, at *8.  The summary judgment record also contained undisputed evidence that the plaintiffs had paid off the debt and the furnishers had provided confirmation to the plaintiffs that the debt had been paid in full.  *Id.; see also, Watson v. Citi Corp.*, No. 2:07-CV-0777, 2008 WL 4186317, at *10 (S.D. Ohio Sept. 5, 2008) ("Ms. Watson argues that the first two ACDVs should have alerted Citibank as to the reasons she believed the account balance to be zero, namely that the matter had been settled, that she could provide documentation concerning this settlement, and that the terms of the settlement included removal from the credit report. This information, together with Ms. Watson's sworn statement that she had provided the details of the settlement to Citibank by telephone prior to Citibank's receipt of the notice of dispute and the evidence of written communications between ARS and Citibank regarding the settlement, is sufficient to establish the existence of an issue of material fact regarding the reasonableness of Citibank's investigation into the ACDV it received on August 4, 2005.").

EMC also cites to First and Seventh Circuit cases to support its position that the reasonableness of a furnisher's investigation is based on the specificity of the information it receives from credit reporting agencies regarding a consumer's dispute.  *See Chiang*, 595 F.3d at 40 (concluding that: "Also significant is that CBCS received only cursory notices from the CRAs, which were generalized and vague about the nature of Chiang's disputes. The summary reports in CBCS's online filing system indicate that the information reported largely consisted of broad, non-specific statements. We take them in turn. Two reports said that Chiang 'claims that this account was never paid late.' However, Chiang has conceded that, beginning in August 2006, he did not pay any part of at least some of his disputed bills—so that cannot be the basis for an inaccuracy. Nor, for the same reason, can two other reports, which indicated that Chiang claimed to have 'paid the original creditor before collection status or paid before charge-off.' Five reports said that Chiang '[c]laims inaccurate information,' which was not in the least bit specific as to what information was disputed. Finally, several reports essentially said that the consumer disputed the account and the account was involved in litigation, which was true, was not challenged by Verizon NE, and again, provided no guidance as to either the specific information that was disputed or the basis for the dispute. None of these reports alerted CBCS to which of the allegedly erroneous charges underlying Chiang's dispute was inaccurate. Nor did they evidence that a more searching inquiry may have been necessary."); *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005) (concluding that "Credit Control's

the information reported regarding his EMC Loan based on the unrelated foreclosure.  *See* Def.'s

App. 38 ("STATES [S]OLD [PROPERTY]YEARS AGO AND THERE IS NO

BALANCE/REPORTING LATES AFTER LAST PYMT MADE."); Def.'s App. 45 ("Disputes

present /previous Account status, History. Verify accordingly. CONS STOPPED PAYING FOR

THE HOUSE IN 2004 AND WAS FORECLOSED ON 2007 / PLS VERIFY ALL HISTORY

REPORTED.").  By disputing the information in his credit report on the ground that the foreclosure

extinguished his EMC Loan or debt, Robinson further confused and obfuscated the issue.  Notably,

prior to receiving a copy of Howard's recommendation at some point during discovery in this

litigation, Robinson's FCRA claim was based on his contention that EMC should have discovered

that the loan had been foreclosed, and it was only in response to EMC's summary judgment motion

that he changed course and asserted that EMC should have discovered the loan was charged off.

Finally, Robinson does not contend or present any evidence to show that EMC's investigation

was unreasonable because, for example, it did not spend sufficient time in investigating his reported

disputes or failed to consider information that it was required to consider under the FCRA in

investigating his disputes.  Likewise, there is no evidence that EMC's procedures for investigating

disputes are inadequate or that EMC failed to follow its internal procedures in investigating

Robinson's reported disputes.  Accordingly, for all of the reasons explained, Robinson has failed to

raise a genuine dispute of material fact regarding the reasonableness of EMC's investigation, and

---

investigation in this case was reasonable given the scant information it received regarding the nature of Westra's dispute. Credit Control received a CDV from Trans Union indicating that Westra was disputing the charge on the basis that the account did not belong to him. The CDV did not provide any information about possible fraud or identity theft or include any of the documentation provided to Trans Union by Westra. Credit Control verified Westra's name, address, and date of birth and sent the CDV back to Trans Union. Had Trans Union given Credit Control notice that the nature of the dispute concerned fraud, then perhaps a more thorough investigation would have been warranted. Given the facts of this case, however, Credit Control's verification of Westra's information was a reasonable procedure.").

**Memorandum Opinion and Order – Page 21**

EMC is entitled to judgment as a matter of law on Robinson's section 1681s-2(b) claim under the FCRA.

## IV.   Robinson's Defamation Claim

The FCRA preempts state law defamation claims unless the plaintiff consumer proves that the defendant acted with "malice or willful intent to injure" him.  *Young*, 294 F.3d 639.  Defamation with malice refers to a defendant's publication of words that it knew were false, or the publication of words in "reckless disregard of whether they were true or not."  *Cousin*, 246 F.3d at 375.

EMC contends that Robinson's defamation claim is preempted by the FCRA because he has not offered any evidence that EMC acted with malice or willful intent to injure him.  EMC further asserts that there is no evidence of a false statement because the EMC Loan was never foreclosed, EMC was not legally required to charge off the account, and there is no evidence that it did charge off the account.  Robinson counters that the issue of whether he was defamed by EMC should be decided by a jury.  Robinson contends that EMC is not reporting the truth because it was required to charge off the account and he has produced evidence that the account was charged off by EMC in February 2005.

Robinson has pointed to no evidence supporting a reasonable inference that EMC knowingly reported false information regarding Robinson's account or acted with willful intent to injure him. Further, it is undisputed that Robinson stopped making payments on the account in 2004, and the foreclosure did not extinguish or otherwise affect his obligations under the EMC Loan, although he mistakenly believed that it did.  In addition, the court has determined that EMC was not legally required to charge off the account after a period of delinquency resulting from Robinson's failure to make monthly payments.  The court also determined that Robinson's contention and evidence that

**Memorandum Opinion and Order – Page 22**

EMC allegedly charged off the account in 2005 but failed to report it as charged off creates at best only a weak issue of fact as to whether the account was actually charged off by EMC.

Moreover, even assuming that the account was charged off in 2005, Robinson acknowledges that this event "would be nothing more tha[n] a small blip on the radar due to its age." Pl.'s Br. 13. Additionally, for the reasons explained, Robinson's vague complaints about his payment history, combined with his disputes regarding the effect of the foreclosure on his account, served only to confuse rather than shed light on the nature of his dispute, which has since evolved into a claim based on the theory that the account should have been charged off after 180 days of nonpayment. Accordingly, Robinson has failed to raise a genuine dispute of material fact as to whether EMC acted with malice or willful intent to injure him, and EMC is entitled to judgment as a matter of law on Robinson's defamation claim on the ground that it is preempted.[14]

## V. EMC's Objections to the Magistrate Judge's Ruling on Motion to Compel

On February 27, 2012, three months after EMC filed its summary judgment motion, Robinson moved to compel responses to interrogatories that he served by mail on October 3, 2011. In its November 7, 2011 response to the interrogatories, EMC made a number of objections, including that the interrogatories were not timely served in accordance with the court's January 13, 2011 scheduling order setting a deadline of November 4, 2011. For the same reason, EMC argued that Robinson's motion to compel should be denied because the interrogatories were served in contravention of the Scheduling Order, which requires discovery to be sent or done so that the

---

[14] Having determined that Robinson's defamation claim is preempted, the court does not address EMC's other grounds for summary judgment as to this claim.

**Memorandum Opinion and Order – Page 23**

answers or responses are produced on or before November 4, 2011. Doc. 20, ¶ 6. Specifically, EMC

contended:

> Plaintiff untimely served Defendant with these interrogatories. Plaintiff served the
> interrogatories on October 3, 2011 by email and certified mail. App. p. 14. Pursuant
> to Federal Rules of Civil Procedure 5(b)(2) and 6(d), three days are added to the time
> period to respond when service is made by mail or electronic means. Fed. R. Civ. P.
> 5(b)(2); Fed. R. Civ. P. 6(d). Thus, EMC's responses were due on November 5, 2011.
> Because November 5, 2011 was a Saturday, Federal Rule of Civil Procedure
> 6(a)(1)(C) further extended the time to respond to the end of the next day that is not
> a Saturday, Sunday, or legal holiday  making EMC's responses due Monday,
> November 7, 2011. Fed. R. Civ. P. 6(a)(1)(C).

Def.'s Br. ¶ 5 (Doc. 88).  Because EMC's answers to Robinson's October 3, 2011 interrogatories

were not due until November 7, 2011, EMC contended that Plaintiff did not serve his interrogatories

such that the answers or responses were due before the November 4, 2011 discovery deadline, and

EMC did not agree to extend the discovery deadline.  Robinson countered that his interrogatories

were timely or that any delay was harmless because the court entered an order on January 31, 2012,

vacating all deadlines pending resolution of EMC's summary judgment motion, and the magistrate

judge previously determined on February 7, 2012, in ruling on a prior motion to compel filed by

Plaintiff on November 14, 2011, that the court's January 31, 2012 order vacated all deadlines.  Pl.'s

Reply (citing Docs. 80 and 90).

Plaintiff's February 27, 2012 Motion to Compel (Doc. 82) was referred to United States

Magistrate Judge Renee Harris Toliver on February 27, 2012, together with other discovery motions.

On May 10, 2012, the magistrate judge granted Plaintiff's Motion to Compel and ordered EMC "to

respond to Plaintiff's interrogatories within ten days of the District Court's determining the motion

for summary judgment."  Doc. 93.  In granting the motion to compel, the magistrate judge

acknowledged but did not address EMC's contention as to the untimeliness of Plaintiff's interrogatories.  The magistrate judge determined that the interrogatories are reasonably calculated to lead to the discovery of admissible evidence, and EMC has failed to show that the discovery is unduly burdensome.   In a footnote, the magistrate judge also noted:

> that Plaintiff's motion was filed months after the discovery deadline passed and after Plaintiff[] [was] made aware of Defendant EMC's objections.  However, the Court finds that Plaintiff's failure to timely file their motion is harmless in light of the District Court's January 31, 2012[] *Order* vacating all deadlines pending resolution of EMC's motion for summary judgment.

*Id*. n.1 (emphasis in original).

On May 25, 2012, EMC filed objections to the magistrate judge's May 10, 2012 order granting Plaintiff's Motion to Compel.  EMC asserted a number of objections, including its objection that the magistrate erred in granting the motion to compel because Plaintiff's interrogatories were not timely served in accordance with the Scheduling Order. On this issue, EMC further contends that the court's January 31, 2012 order vacated only the trial and pretrial deadlines and did not affect the discovery deadline or other deadlines.

Plaintiff did not assert objections to the magistrate judge's order.  In his response to EMC's objections, Plaintiff contends that: EMC's objections to the magistrate judge's order are untimely because they were filed 15 days rather than 14 days as required by Rule 72(a) of the Federal Rules of Civil Procedure; EMC's objections are hypocritical and boilerplate; and Plaintiff's interrogatories are relevant and not unduly burdensome.

As to the timeliness of its objections to the magistrate judge's order, EMC maintains:

> Federal Rule of Civil Procedure 72(a) provides that objections to a magistrate's order on non-dispositive matters may be served and filed "within 14 days after being served with a copy." Fed. R. Civ. P. 72(a). Local Rule 5.1(d) provides that

"[d]elivery of the notice of electronic filing that is automatically generated by ECF constitutes service under Fed. R. Civ. P. 5(b)(2)(E) on each party who is a registered user of ECF." LR 5.1(d). EMC was served on May 11, 2012; thus, its objections were due on May 25, 2012. *See* Docket No. 93 (transaction entered on May 11, 2012 and electronic notice sent on May 11, 2012); *see* Fed. R. Civ. P. 72(a); *see* LR 5.1(d). EMC filed and served its objections on May 25, 2012. *See* Docket Nos. 94, 95. Accordingly, EMC's objections were timely filed and served.

Def.'s Reply 1-2.

The court first determines that EMC's objections to the magistrate judge's order were timely filed on May 25, 2012, within fourteen days of the magistrate judge's May 10, 2012 order because the court's records show that while the order is dated May 10, 2012, it was not entered on the docket and served on the parties until May 11, 2012, at 8 a.m.  Moreover, Rule 6(d) contemplates that three days are added when a party is served under Rule 5(b)(2)(E).  Plaintiff's contention in this regard is therefore without merit.

The court further determines that Plaintiff's October 3, 2011 interrogatories, which are the subject of its February 27, 2012 Motion to Compel, were not timely served in accordance with the court's Scheduling Order because, as correctly noted by EMC, the discovery was not sent or done so that EMC's answers or responses were produced on or before November 4, 2011.  Doc. 20, ¶ 6. Contrary to Plaintiff's assertion, the court's January 31, 2012 order vacated *only the trial and pretrial deadlines* pending resolution of EMC's summary judgment motion.  The court did not vacate the November 4, 2012 discovery deadline because that deadline had already expired.  The court would have had to establish a new discovery deadline.  As the magistrate judge misinterpreted the court's order vacating the pretrial deadlines, which she considered to conclude that Plaintiff's untimely service of his interrogatories on EMC was harmless, the court **sustains** EMC's objection

to the magistrate judge's order to the extent that the order required EMC to provide answers to Plaintiff's interrogatories, and the court **vacates** that portion of the magistrate judge's order.

Moreover, even if the court did not sustain EMC's objection and vacate this part of the magistrate judge's ruling, Plaintiff never contended that he needed additional time to respond to the summary judgment motion based on the answers to his interrogatories; nor did he object to the magistrate judge's determination that EMC was not required to respond to Plaintiff's interrogatories before the court ruled on the summary judgment motion.  Notably, Plaintiff did not even seek to compel responses to these interrogatories until three months after EMC moved for summary judgment, even though he moved  on November 14, 2011, to compel other discovery.  Accordingly, even if the interrogatories had been timely served in accordance with the court's Scheduling Order, the court determines that Plaintiff's ability to respond to the summary judgment motion without the benefit of this discovery was not affected.  Therefore, the issue of whether Plaintiff should have been provided this discovery is moot.

## VI.     EMC's Objections to Robinson's Evidence

The court has only considered evidence that is admissible pursuant to the summary judgment standard herein enunciated, Rule 56 of Federal Rules of Civil Procedure, and the rules and Fifth Circuit authority regarding expert testimony. Accordingly, to the extent the court has not explicitly addressed all of EMC's arguments regarding objections to  evidence, they are **overruled as moot**.

## VII.    Amendment of Pleadings

Rule 15(a)(2) of the Federal Rules of Civil Procedure states "[t]he court should freely give leave when justice so requires" is not without limitation. The decision to allow amendment of a party's pleadings is within the sound discretion of the district court. *Foman v. Davis*, 371 U.S. 178,

182 (1962); *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994) (citation omitted). In determining whether to allow an amendment of the pleadings, a court considers the following: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman*, 371 U.S. at 182; *Schiller* v. *Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003) (citation omitted).

Federal Rule of Civil Procedure 16(b) governs amendment of pleadings after a scheduling order deadline has expired.  *S & W Enterprises v. Southtrust Bank of Alabama*, 315 F.3d 533, 536 (5th Cir. 2003). Rule 16(b)(4) provides that once a scheduling order has been entered, it "may be modified only for good cause and with the judge's consent." It requires a party seeking relief "to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *Id.* at 535 (quoting 6A Charles Alan Wright et al., Federal Practice and Procedure § 1522.1 (2d ed.1990)). With respect to a request for postdeadline amendment, a party must show good cause for not meeting the deadline before the more liberal standard of Rule 15(a) will apply to the district court's decision to grant or deny leave to amend. *Id*. at 536. Four factors are relevant to good cause: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Id.* (citations and brackets omitted). The court's deadline for amendment of pleadings was August 16, 2011.

The deadline to amend pleadings was April 11, 2011, and has long since passed.  Doc. 20. Plaintiff has not requested to amend his pleadings, but the possibility of his doing so was raised by the court during the December 21, 2012 hearing.  EMC opposed any suggestion of permitting

Robinson to amend his pleadings at this late juncture.  Although the court repeatedly expressed

concern during the hearing about the adequacy of Plaintiff's pleadings and whether his claims based

on the charged-off theory were properly before the court, Plaintiff stood by his pleadings and took

the position that although his Amended Complaint focused on the effect of the 2007 foreclosure, his

single reference to "charged off" in paragraph 30 of his Complaint was sufficient to put EMC on

notice that his claims are based on the theory that the account should have been charged off.

The court concludes that Plaintiff has not established good cause to further amend his

pleadings at this late stage of the litigation.  Plaintiff has not shown that he was diligent in seeking

to amend his pleadings a second time; nor has he provided an adequate explanation for the untimely

request to amend.  Further, because the case has been pending since October 25, 2010, and briefing

on EMC's summary judgment motion has been complete for over a year, the court concludes that

EMC would be prejudiced by the requested late amendment, and that such prejudice would not be

cured by a continuance.  Finally, the court has the inherent discretion to manage its docket and does

not believe that it should accommodate litigants who fail to demonstrate diligence.  *See Reliance Ins.*

*Co. v. Louisiana Land & Exploration Co.*, 110 F.3d 253, 258 (5th Cir. 1997).  Accordingly, the court

will not allow Plaintiff an another opportunity to amend his pleadings.

Moreover, Plaintiff was previously granted leave to amend his pleadings and, although the

court questions whether Plaintiff's claims based on his charged-off theory were properly before the

court, the court has considered the parties' contentions in this regard in ruling on EMC's summary

judgment motion and determined that Plaintiff's FCRA and defamation claims, based on the theories

that EMC charged off or should have charged off Robinson's account, fail as a matter of law.

Accordingly, no amount of artful or creative pleading of facts will permit him to state claims upon

**Memorandum Opinion and Order – Page 29**

which relief can be granted based on these theories.  Thus, further attempts to amend these claims based on these theories would be futile and unnecessarily delay the disposition of this case.  The court therefore will not permit Plaintiff to amend his pleadings.

## VIII.   Conclusion

For the reasons stated herein, the court determines that no genuine disputes of material fact exist as to any of Plaintiff's claims, and Defendant EMC is entitled to judgment as a matter of law. Accordingly, the court **grants** Defendant EMC Mortgage LLC's Motion for Summary Judgment (Doc. 46), **sustains** Defendant EMC Mortgage LLC's Objections to Order Granting Plaintiff's Motion to Compel (Doc. 94) as herein stated, **vacates in part** the magistrate judge's order (Doc. 93), and **dismisses** this action **with prejudice**. The court, as required by Rule 58 of the Federal Rules of Civil Procedure, will issue judgment by separate document.

**It is so ordered** this 26th day of March, 2013.

Sam A. Lindsay
United States District Judge